**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SINGER MANAGEMENT CONSULTANTS, INC. and LIVE GOLD OPERATIONS, INC., | Civ. No. 07-3929 (DRD) |
| Plaintiffs, | **O P I N I O N** |
| v. | |
| ANNE MILGRAM, Attorney General of the State of New Jersey, | |
| Defendant. | |

*Appearances by:*

GEORGE W. WRIGHT & ASSOCIATES, LLC
George W. Wright, Esq.
Narinder S. Parmar, Esq.
Continental Plaza
401 Hackensack Avenue
Hackensack, New Jersey 07601

    *Attorneys for Plaintiffs*

PRYOR CASHMAN LLP
William L. Charron, Esq.
410 Park Avenue
New York, New York 10022

    *Attorneys for Plaintiffs only as to the Appeal from Magistrate Judge Salas's Order*

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY
Jeffrey Koziar, Esq.

Lorraine K. Rak, Esq.
Division of Law
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, New Jersey 07101

    *Attorneys for Defendant*

**<u>DEBEVOISE, Senior District Judge</u>**

On August 16, 2007, Singer Management Consultants, Inc. ("Singer Management") and Live Gold Operations, Inc. ("Live Gold) (collectively, "Plaintiffs") filed this action against the Attorney General of the State of New Jersey, Anne Milgram, (the "Attorney General" or the "State") seeking a temporary restraining order and preliminary and permanent injunctive relief. Plaintiffs allege that the State's action under the Deceptive Practices in Musical Performances Statute, N.J.S.A. 2A:32B-1 <u>et</u> <u>seq.</u> (the "Truth in Music Act" or the "Act") is preempted by the Lanham Act, 15 U.S.C. § 1125, and violates their rights under the takings clause, equal protection clause and the First Amendment to the U.S. Constitution. The State now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint. Additionally, the Plaintiffs now appeal Magistrate Judge Salas's December 29, 2008 Order (the "December 29 Order") denying their request for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b). For the reasons set forth below, the State's motion to dismiss will be granted and the Plaintiffs' appeal of the December 29 Order will be denied.

## I.  BACKGROUND

**A.**　　**The Complaint**

Live Gold claims to hold exclusive rights to the unregistered marks "The Platters" and "The Cornell Gunter Coasters," and manages and promotes singing groups by those names. Singer Management claims to hold exclusive rights to the unregistered mark "The Elsbeary

Hobbs Drifters" and previously managed and promoted a singing group by that name.  In their Complaint, Plaintiffs allege that the Defendant specifically purported to exercise authority under the Truth in Music Act "to restrain promotion for a collective group performance of The Platters, The Cornell Gunter Coasters and the Elsbeary Hobbs Drifters at the Hilton Hotel in Atlantic City (the 'Hilton Show') scheduled to take place on August 18, 2007 and for two weeks thereafter." (Compl. ¶ 9.)  Plaintiffs claim that they attempted to work in good faith with the Defendant by voluntarily producing evidence of their rights to these unregistered marks and explanations of why they should be considered in compliance with the Truth in Music Act, but that the Defendant refused to recognize those rights and permit promotion for the Hilton Show to continue.  (Id. ¶ 10.)

Plaintiffs' First Count alleges that the Truth in Music Act conflicts with the Lanham Act, and thus violates the Supremacy Clause, because the Lanham Act protects registered and distinctive unregistered trademarks equally and the Defendant's enforcement of the Act prevents the fulfillment of the objective of the Lanham Act.  (Id. ¶¶ 49-52.)  Plaintiffs' Second Count alleges a violation of the takings clause of the Fifth Amendment to the U.S. Constitution in that Defendant's enforcement of the Truth in Music Act effects a taking of the Plaintiffs' property rights in their unregistered trademarks without compensation.  (Id. ¶¶ 56-59.)  Plaintiffs' Third Count alleges a violation of the right to free speech under the First Amendment to the U.S. Constitution in that it prevents holders of unregistered but valid trademarks from causing their musical groups to perform, to be promoted and to speak.  (Id. ¶¶ 63-64.)  Plaintiffs' Fourth Count alleges a violation of the equal protection clause of the Fourteenth Amendment to the U.S. Constitution.  Plaintiffs allege that Defendant's enforcement of the Truth in Music Act "between performing groups with registered trademarks (who may perform) and performing groups with

unregistered trademarks (who may not perform unless they receive some additional approval or involvement from 'recording groups')."  (Id. ¶ 67.)  In Counts One through Four, Plaintiffs ask the court to preliminarily and permanently enjoin the Defendants from enforcing the Truth in Music Act against Plaintiffs.  In their Fifth Count, Plaintiffs seek a declaratory judgment either that the Truth in Music Act must be construed to recognize Plaintiffs' rights and that Defendant's enforcement of the Act is unconstitutional, or that Defendant may not enforce the Act because it is unconstitutional.  In Count Six, Plaintiffs allege that Defendant, acting under color of state law, has deprived Plaintiffs of rights secured by the U.S. Constitution and the law of the United States in violation of 42 U.S.C. § 1983.  Plaintiffs seek equitable relief on all counts except for the alleged violation of 42 U.S.C. § 1983, for which they seek damages, including but not limited to attorneys' fees and costs incurred in connection with this case.  (Compl. ¶ 76.)

**B.**      **The Truth in Music Act**

The Truth in Music Act, which became effective May 4, 2007, provides:

> A person shall not advertise or conduct a live musical performance or production through the use of an affiliation, connection or association between the performing group and the recording group unless:
> a. The performing group is the authorized registrant and owner of a federal service mark for the group registered in the United States Patent and Trademark Office; or
> b. At least one member of the performing group was a member of the recording group and has a legal right by virtue of use or operation under the group name without having abandoned the name or affiliation of the group; or
> c. The live musical performance or production is identified in all advertising and promotion as a salute or tribute; or
> d. The advertising does not relate to a live musical performance or production taking place in this State; or
> e. The performance or production is expressly authorized by the recording group.

N.J.S.A. 2A:32B-2.  As used in the statute, "performing group" means "a vocal or instrumental group seeking to use the name of another group that has previously released a commercial sound recording under that name."  N.J.S.A. 2A:32B-1.  "Recording group" is defined as "a vocal or instrumental group, at least one of whose members has previously released a commercial sound recording under that group's name and in which the member or members have a legal right by virtue of use or operation under the group name without having abandoned the name or affiliation with the group."  Id.  "Sound recording" means "a work that results from the fixation on a material object of a series of musical, spoken or other sounds regardless of the nature of the material object, such as a disk, tape or other phono-record, in which the sounds are embodied." Id.

## C.    Temporary Restraining Order and Preliminary Injunction Hearing

On August 17, 2007, one day before the Hilton Shows were to commence, this court, on emergency application of the Plaintiffs, issued an order to show cause with a temporary restraining order against the Attorney General's enforcement of the Truth in Music Act against Plaintiffs, including a restraint against any interference with live performances at the Hilton Hotel in Atlantic City, New Jersey, by the Plaintiffs' respective groups and the marketing and promotion thereof.  On September 7, 2007, after the parties had fully briefed the issues, the court held a hearing on Plaintiffs' motion for a preliminary injunction.

In its opposition to the Plaintiffs' motion for a preliminary injunction, the State maintained that, under the Truth in Music Act, a performing group that has an unregistered trademark must bill itself as a tribute group.  At the hearing, however, the State indicated that the sentence in its brief regarding this interpretation of the Act was "inadvertently put into the brief." (Prelim. Inj. Hr'g Tr. 24:20 – 26:5, Sept. 7, 2007.)  The State agreed with this court's statement

that "the State's position is that once a holder of a common law trademark establishes its right to that trademark, they're in the same position as the holder of a registered trademark."  (Id. at 27:22 – 28:7.)  In other words, "If there's a valid common law trademark under the Lanham Act, and if whoever has possession of it can establish a right to that possession, he is to be treated – or she is to be treated in the same way as the holder of a registered trademark."  (Id. at 31:14 – 18.)  Because of the State's agreement on this point regarding the treatment of common law marks, this court found that the basic legal problems – equal protection, First Amendment and due process – were resolved.  This court therefore vacated the temporary restraining order and did not grant a preliminary injunction.  (Id. at 36:2 – 16.)

At the March 16, 2009 hearing on the motion to dismiss and the appeal of the December 29 Order, the State again confirmed that it interprets and will apply part (a) of the Truth in Music Act to include common law trademarks rather than just registered marks, thereby providing equal protection to holders of registered trademarks and common law trademarks.  Both the Plaintiffs and the State again confirmed that the Plaintiffs' constitutional claims were resolved by this interpretation of the Act.  Indeed, in Plaintiffs' brief in support of its appeal of the December 29 Order, Plaintiffs stated that this court "will not be called upon to further address the parties' constitutional arguments on the merits – because Ms. Milgram agreed to be bound by her office's representation at the preliminary injunction hearing that Ms. Milgram would no longer discriminate against Plaintiffs' unregistered trademarks."  (Pls.' Br. in Supp. of Appeal at 2.)

D.     **Magistrate Judge Salas's Decision**

The law firm of Pryor Cashman, LLP ("Pryor Cashman") served as counsel to Plaintiffs during the proceedings for the temporary restraining order and the preliminary injunction hearing in August and September of 2007.  In January of 2008, Pryor Cashman filed a motion to

withdraw as attorneys for the Plaintiffs.  Magistrate Judge Salas granted that motion.  On September 25, 2008, Pryor Cashman filed a letter requesting permission to file a motion for an award of prevailing party attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).  Judge Salas denied that motion in the December 29 Order, where she noted that "in order to permit an award of attorney's fees under § 1988, there must be a 'material alteration of the legal relationship of the parties.'"  (Dec. 29, 2008 slip op. at 2-3 (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)).)  She further explained that, although "[l]itigation need not progress to a final judgment on the merits in order for a § 1988 fee award to be suitable," the change the legal relationship of the parties must be "court-ordered" and "must award the plaintiff some relief on the merits."  Id. at 3 (citing Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (2001)).  Additionally, Judge Salas noted that "the Court [in Buckhannon] held that a defendant's voluntary change in conduct, even when it accomplishes what the plaintiff set out to achieve through the lawsuit, 'lacks the necessary judicial imprimatur on the change.'"  Id. (quoting Buckhannon, 532 U.S. at 605).  Therefore, Judge Salas held that because the change in the legal relationship between the Plaintiffs and the State arose from the State's "perceived voluntary change in conduct, and not from a direct court order" and because Plaintiffs "have yet to receive any court-ordered relief on the merits of their claim," they cannot be considered prevailing parties within the meaning of § 1988.  Id. Accordingly, Judge Salas denied the Plaintiffs' motion.

## II.  DISCUSSION

**A.      Appeal of the December 29 Order**

> *i.      Standard of Review for Appeal of a Magistrate Judge's Decision*

A magistrate judge's decision may be overturned only when the ruling was clearly erroneous or contrary to law.  L. Civ. R. 72.1(c)(1)(A).[1]  "The party filing the notice of appeal bears the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law."  Marks v. Struble, 347 F. Supp. 2d 136, 149 (D.N.J. 2004) (quoting Cardona v. Gen. Motors Corp., 942 F. Supp. 968, 971 (D.N.J. 1996) (internal quotations omitted)).  A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948) (internal quotation marks omitted)).  A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law.  Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 162, 164 (D.N.J. 1998).

> *ii.      Attorneys' Fees*

Section 1988(b) of Title 42 of the U.S. Code provides that in any action to enforce the civil rights laws enumerated therein, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  Plaintiffs claim that they are entitled to attorney's fees from their claim under 42 U.S.C. § 1983.

---

[1]  L. Civ. R. 72.1(c)(l)(A) states:  "Any party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 10 days after the party has been served with a copy of the Magistrate Judge's order . . . . A Judge shall consider the appeal and/or cross-appeal and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law."

"Parties are considered 'prevailing parties' if they succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." People Against Police Violence v. City of Pittsburgh, 520 F.3d 226, 232 (3d Cir. 2008) (citing J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 271 (3d Cir. 2002) (internal quotation marks omitted)).  "To succeed under this standard, a party must achieve a court-ordered change in the legal relationship between the plaintiff and the defendant." People Against Police Violence v. City of Pittsburgh, 520 F.3d 226, 232 (3d Cir. 2008) (citing Buckhannon, 532 U.S. at 604 (internal quotation marks omitted)).  "Therefore, courts may not award fees based on a 'catalyst theory;' a plaintiff does not become a 'prevailing party' solely because his lawsuit causes a voluntary change in the defendant's conduct." Id.  In such a situation, "the change in legal relationship lacks the requisite 'judicial imprimatur'" of a court-ordered change. Id. (citing Buckhannon, 532 U.S. at 601, 605).

### iii.     The December 29 Order Was Not Clearly Erroneous or Contrary to Law

Plaintiffs argue that Judge Salas's ruling in the December 29 Order was clearly erroneous or contrary to law and should be reversed.  Plaintiffs rely on the recent decision in People Against Police Violence, where the Court of Appeals for the Third Circuit held that "relief obtained via a preliminary injunction can, under appropriate circumstances, render a party 'prevailing.'" 520 F.3d at 233.  In that case, the Court of Appeals found a party to be a "prevailing party" under § 1988(b) where

> (1) the trial court, based upon a finding of a likelihood of plaintiffs' success on the merits, entered a judicially enforceable order granting plaintiffs virtually all the relief they sought, thereby materially altering the legal relationship between the parties; (2) the defendant, after opposing interim relief, chose not to appeal from that order and remained subject to its restrictions for a period of over two years; and (3) the defendant ultimately avoided final resolution of the merits of plaintiffs' case by enacting new

> legislation giving plaintiffs virtually all of the relief sought in the complaint.

Id. at 233.  The Court of Appeals stressed that the case did not involve a situation where the filing of the lawsuit resulted in a voluntary change on the part of the defendant.  Rather, the defendant opposed the TRO and preliminary injunction at the first two hearings in the matter, filed a motion to dismiss prior to the third hearing, and ultimately consented to the injunction, with modifications, only when the trial court denied the motion to dismiss.  Id. at 235.

Judge Salas's December 29 Order correctly noted the important distinctions between the facts relied upon by the Court of Appeals in People Against Police Violence and those in this case.  Here, "the change in the parties' legal relationship arose from Defendant's perceived voluntary change in conduct, and not from a direct court order."  (Dec. 29, 2008 slip op. at 3.) This court did not enter a preliminary injunction or any other order on the merits of the case. Rather, it vacated the August 17, 2007 TRO after the hearing on the preliminary injunction at which the State changed or clarified its position.  As specified by the U.S. Supreme Court in Buckhannon, a change in the parties' relationship must be court ordered – such as a legal judgment on the merits or a settlement agreement enforced through a consent decree – in order for a party to be considered a prevailing party under § 1988.  532 U.S. at 603-04.  There was no such order in this matter.

Plaintiffs also rely on a recent case from the Northern District of New York, Trudeau v. Bockstein, No. 05-cv-1019, 2008 WL 3413903 (N.D.N.Y. Aug. 8, 2008).  There, the district court granted a preliminary injunction to the plaintiff, but ultimately did not grant a permanent injunction because any future injury was "speculative and remote."  Id. at *4.  The court, however, determined that the plaintiff was a prevailing party for the purposes of § 1988 because the preliminary injunction constituted a court ordered change in the legal relationship between

the parties, and "[t]he preliminary injunction was not subsequently dissolved on the merits." Id. Again, in Trudeau, there was a court ordered change in the relationship between the parties through the issuance of the preliminary injunction; here, there was no such order.

Finally, Plaintiffs argue that they "obtained all of the constitutional relief that they sought in this case as a result of this Court's involvement, issuance of the TRO and exercise of the authority during the preliminary injunction hearing." (Pls.' Br. in Supp. of Appeal at 10). While it may be true that this court's involvement aided in the resolution of the constitutional issues between the parties, the fact remains that the issues were not resolved as the result of a court order. Plaintiffs have presented no authority that would allow this court to bypass the Supreme Court's requirement that, in order to qualify as a prevailing party, the change in the legal relationship between the parties must be the result of a court order. See Buckhannon, 532 U.S. at 604.

Judge Salas's December 29 Order was not clearly erroneous or contrary to law and is hereby affirmed.

**B.     Motion to Dismiss**

*i.     Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. In considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

The Supreme Court recently clarified the standard for a motion under Rule 12(b)(6) in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007).  The Court in Bell Atlantic abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, the Bell Atlantic Court held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  127 S.Ct. at 1965.  Thus, the assertions in the complaint must be enough to "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation."  Phillips, 515 F.3d at 234-35.

It is not necessary, however, for a complaint to allege specific facts that conclusively establish a right to relief.  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citing Bell Atl., 127 S. Ct. at 1964).  A complaint is adequately pled as long as it includes facts sufficient to "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Id. (internal citations omitted).  In evaluating a motion to dismiss, the court must consider what is alleged in the complaint and "may consider documents that are attached to or submitted with the complaint and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (citing Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) and 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) (internal quotation marks and citation omitted)).

### ii.    Plaintiffs' Constitutional Claims Are Moot

As discussed above, Plaintiffs have stated that they "obtained all of the constitutional relief that they sought in this case as a result of this Court's involvement, issuance of the TRO and exercise of the authority during the preliminary injunction hearing." (Pls.' Br. in Supp. of Appeal at 10.) Further, they have stated that "[t]he constitutional disagreements in this case were resolved finally and entirely in Plaintiffs' favor on September 7, 2007." (Id.) Thus, both Plaintiffs and Defendants agree that there are no constitutional claims remaining in this matter. Plaintiffs allege that the only issue that remains open in this case is whether Plaintiffs can demonstrate that they use their respective marks under valid contracts. (Id. at 2.) Not one of Plaintiffs' claims, however, is related to this matter. Each Count of the Plaintiffs' Complaint alleges a constitutional violation (see compl. ¶¶ 52, 59, 64, 68, 73 and 75), and there are no additional, non-constitutional violations alleged. Because the parties agree that all constitutional issues in this matter have been resolved, all Counts in the Complaint will be dismissed as moot.

### C.    The State's Counterclaims

In September of 2007, the State filed an Answer and Counterclaims. The Counterclaims allege violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., and the Truth in Music Act. (Countercl. ¶¶ 5, 16, 27, 31, 38). This court exercised supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(a). "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Wis. Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citing 28 U.S.C. § 1367(a)) (internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction pursuant to 28

U.S.C. § 1367(a) over state claims, the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1284-1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" Growth Horizons, 983 F.2d at 1284 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims.  United Mine Workers, 383 U.S. at 726; Growth Horizons, 983 F.2d at 1284-1285.  Here, every claim over which the court had original subject matter jurisdiction is dismissed.  At this early stage in the litigation, in accordance with the principles of judicial economy and fairness to the litigants, the court declines to continue to exercise supplemental jurisdiction over the State's counterclaims.

### III.  CONCLUSION

For the reasons set forth above, the Plaintiffs' appeal of the December 29 Order will be denied and the State's motion to dismiss will be granted.  The State's counterclaims will be dismissed without prejudice.  The Court will enter an order implementing this opinion.

　　　　　　　　　　　　　　　　_____s/ Dickinson R. Debevoise_____
　　　　　　　　　　　　　　　　DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  April 7, 2009